## THE NORTH CHICAGO ELECTRIC RAILWAY COMPANY

*v.*

### CHARLES PEUSER.

*Opinion filed April 18, 1901.*

1. STREET RAILWAYS—*company has superior right of travel at places other than crossings.* At places other than street crossings a street railway company has a right of passage along its track superior to the right of one driving a vehicle upon the tracks in a street; but the company must employ all reasonable means to avoid injuring persons rightfully using that portion of the street occupied by its tracks. (MAGRUDER, J., dissenting.)

2. SAME—*right of person to drive upon street railway tracks in public street.* Subject to the rule that he must exercise ordinary care for his own safety and not obstruct the passage of cars, a person may drive upon the tracks of a street railway company laid in a public street without becoming a trespasser, but it is his duty to leave the track whenever his presence there serves to impede the passage of cars. (MAGRUDER, J., dissenting.)

3. INSTRUCTIONS—*when party is not estopped to complain of court's refusal of his instruction.* If the court refuses to give an instruction and the party asking the same preserves an exception to such ruling, he may prepare an instruction presenting the most favorable view of the law which the court will entertain, and he is not, by the giving of such instruction, estopped to assign error upon the court's refusal to give the instruction as originally prepared by him. (MAGRUDER, J., dissenting.)

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

JOHN A. ROSE, and LOUIS BOISOT, Jr., (W. W. GURLEY, of counsel,) for appellant:

It is the province and duty of the court to state specifically to the jury what issues are raised by the pleadings, and it is erroneous to refer the jury to the pleadings to ascertain for themselves what the issues were. The construction of the pleadings and the issues raised thereby are questions for the court alone to determine, and not for the jury. *Railroad Co.* v. *King,* 179 Ill. 91; 11 Ency. of Pl. & Pr. 154.

While a street railway company has no such exclusive right to the use of its track and the ground covered by it as exists in the case of an ordinary railroad company, but is entitled to use it only in common with others traveling on the highway, its right is superior to that of all other parties. 23 Am. & Eng. Ency. of Law, 990.

The same rule has been stated in other words by saying that street railroad companies have a paramount, though not an exclusive, right to that portion of the highway which is taken up by their tracks and which is between intersecting highways. *Rosenblatt* v. *Railroad Co.* 50 N. Y. Supp. 333; *Flewelling* v. *Railroad Co.* 89 Me. 585.

That street railway cars have the preference in the street, and that others should use reasonable care to keep out of their way, has also been held in the case of *Fenton* v. *Railroad Co.* 126 N. Y. 625.

J. WARREN PEASE, and McGLASSON & BEITLER, for appellee:

The public streets of a city are for the use of the public. Both individuals and street car companies are entitled to pass over them, but each must exercise due care for his own safety and the safety of others who are upon the streets. *General Electric Railway Co.* v. *Railway Co.* 66 Ill. App. 362; *Railway Co.* v. *Ingraham,* 131 Ill. 659; *Railway Co.* v. *Jennings,* 157 id. 274; 2 Shearman & Redfield on Neg-

ligence, (5th ed.) p. 864, secs. 485*a*, 485*b*, 485*c*; *Railroad Co.* v. *Zeiger*, 182 Ill. 9; *Railroad Co.* v. *Levy*, 82 Ill. App. 202.

Appellee was only required to use ordinary care on his own behalf. *Railway Co.* v. *Lynholm*, 70 Ill. App. 371; *Railway Co.* v. *Christenson*, id. 84; *Railroad Co.* v. *Levy*, 82 id. 202; *Railroad Co.* v. *Zeiger*, 182 Ill. 9; 23 Am. & Eng. Ency. of Law, 1023.

One party cannot complain of instructions given by the opposite party when his own contain the same defects. *Railroad Co.* v. *Beebe*, 174 Ill. 13; *Consolidated Coal Co.* v. *Haenni*, 146 id. 614.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

In an action on the case instituted by the appellee he was awarded judgment against the appellant company in the sum of $2000, and the judgment was affirmed by the Appellate Court for the First District. The record is here by the further appeal of the railway company.

The declaration alleged that the defendant company so carelessly and negligently managed a certain street car that it collided with a wagon in which plaintiff was riding, whereby plaintiff was thrown out and injured. The defendant (appellant) pleaded the general issue.

The appellant company operates a line of electric street cars along Milwaukee avenue, in the city of Chicago. At about the hour of nine o'clock of the night of the 22d day of August, 1897, one of its cars struck a light spring wagon in which appellee and one Fred W. Daehn were riding and threw them to the surface of the street, thereby injuring the appellee. Appellee and his companion were driving in a southerly direction on and along the track of appellant's line of electric street railroad, and the car which ran upon and struck the wagon was moving in the same direction. It was quite dark and in the outskirts of the city. Gasoline lamps at the corners and centers of the blocks furnished the only light. The

affirmative testimony,—that of the motorneer and a number of passengers;—was, that the motorneer sounded the bell repeatedly for the purpose of warning the appellee that the car was approaching. The evidence also tended to show the appellee and his companion were under the influence of intoxicating liquors and were singing and shouting. They finally attempted to turn the wagon from the track of the street railway, but whether they heard the bell and wanted to leave the track because the car was approaching them from the rear, or desired to drive to a saloon they were approaching by the roadside, did not clearly appear. There was evidence tending to show the motorneer endeavored to stop the car when it appeared there was danger of a collision. There was also evidence tending to show the car was moving along at an excessive rate of speed. It was essential the jury should have been accurately and correctly advised as to the relative rights, duties and obligations of the appellant company and of the appellee.

The appellant company asked, but the court refused to give, the following instruction to the jury:

"The jury are instructed that by reason of its convenience to the public as a carrier of passengers, and because of the inability of its cars to turn out, a street railway company is invested with the right of way over other vehicles over the portion of street occupied by its tracks, and it is the duty of the drivers of such vehicles to turn out and allow its cars to pass, and to use care not to obstruct and delay the same, and if the jury believe, from the evidence, that the plaintiff, while neglecting such duty and failing thereby to use ordinary care for his own safety, was injured, then he cannot recover in this case."

Street railway companies are public carriers of passengers, and are given corporate existence to enable them to provide the means of rapid transportation for the convenience of the people and the promotion of the

public welfare. The cars of such corporations cannot give and take the road,—turn to the right or to the left, —as can ordinary vehicles, but must move on and along the rails laid down in the street for that purpose. The grant to such corporation of the right to use the streets of a city must, by necessary implication, be held to confer the right of passage along its track superior to the right of a horseman or one driving a vehicle on that portion of the street occupied by the tracks of the railway company. Such companies do not, however, have an exclusive right to the use of that part of the streets occupied by their tracks. The public are not deprived of the right to use all parts of the street in the ordinary manner, but retain such right subject only to the superior right of passage, which, out of considerations of public convenience and the necessities of the case, must be yielded to the street cars on that portion of the street occupied by the tracks of the railway. The citizen passing along a street in a carriage, buggy or other like vehicle, subject to the rule he must exercise ordinary care for his own safety and not obstruct the passage of the car, may drive on the track or rails laid in the street by a street car company and drive along and upon such track or rails without becoming a trespasser, but it is his duty to leave the track whenever his presence there serves to impede the passage of the cars. On the other hand, a street railway company is charged with the knowledge that the public may lawfully use the entire street, and it must, in operating its cars on the streets, employ all reasonable means to avoid injuring those whom it knows may rightfully use that part of the street occupied by its tracks. The rights, duties and liabilities enjoyed by and resting upon the individual and street railway companies, respectively, when a horseman, footman or driver of a vehicle is endeavoring to cross the track of a street railway company at the intersection of streets are not here involved and need not be here

adverted to. What we have said applies only to other portions of the streets than street intersections. The principles we have announced are supported by adjudicated cases in this court and the consensus of modern authority. (*Chicago West Division Railway Co. v. Bert*, 69 Ill. 388; *North Chicago Street Railway Co. v. Smadraff*, 189 id. 155; Elliott on Roads and Streets,—2d ed.—secs. 761, 762; 23 Am. & Eng. Ency. of Law,—1st ed.—pp. 990, 991.) It was error to refuse to grant the instruction.

It is, however, urged the appellant company should be deemed estopped to complain of this error for the reason it, as it is urged, asked the court to instruct the jury that the rights and duties of the appellee and the company were reciprocal. Instruction No. 5 given in behalf of the appellant company is as follows:

"The rights and duties of persons occupying the public street are reciprocal, and although it is the duty of a street car company operating its cars upon such a street to use due and ordinary care for the safety of persons using such street, yet it is also the duty of such persons to use the same with due and ordinary care for their own safety; and if you believe, from the evidence, that the plaintiff in this case failed to use the care which a reasonably prudent person would have used under similar circumstances, to avoid the injury for which this suit is brought, then he cannot recover in this case."

We have frequently recognized and enforced the doctrine that a party is held, on appeal, to the position which he assumed in the trial court, and will be estopped to complain in the court of review of an erroneous ruling of the trial court in passing upon instructions if the court was induced to make such ruling by the procurement or invitation of such party. (*Pierce v. Millay*, 62 Ill. 133; *Northern Line Packet Co. v. Binninger*, 70 id. 571; *Ryan v. Donnelly*, 71 id. 100; *Illinois Central Railroad Co. v. Latimer*, 128 id. 163; *Snyder v. Snyder*, 142 id. 60; *Consolidated Coal Co. v. Haenni*, 146 id. 614; *Illinois Central Railroad Co.*

*v. Harris*, 162 id. 200; *Illinois Steel Co.* v. *Novak*, 184 id. 501.) The principle which governed in the decision of the cases cited is, that an appellant or plaintiff in error must be consistent; that he cannot procure the trial court to make a specific ruling and be allowed to complain in a court of review that such ruling was erroneous. Otherwise stated, the rule is, a party must accept the result of an error which was occasioned at his request or by his invitation. The record here, however, discloses the appellant company did not invite or desire the court to announce the principle set forth in instruction No. 5, that the rights of appellant company and the appellee were reciprocal, but, on the contrary, that it sought to have the court adopt the view announced in the refused instruction,—that it was invested with a superior right of way, and that it was the duty of the appellee to drive off the tracks in order that its car might pass. The record shows the appellant company prepared the refused instruction and presented it to the court and asked that it be given; that the court declined to grant it and marked it as refused; that the appellant company then and there objected and excepted to such ruling and had its exceptions noted and duly preserved. Being unable to induce the court to instruct the jury according to its view of the true legal principle affecting its rights, the appellant company then presented a series of instructions embodying the theory of the law on the point as held by the court, as the most favorable declaration from the court to the jury possible to be obtained. The appellant company was not required to abandon all chances of a favorable verdict because the court would not grant an instruction to which it believed it was entitled. Without impropriety or the loss of the right to complain of the refusal of the court to declare the law as the company believed it to be, counsel for the appellant company might prepare instructions applicable to its cause in that view of the law which the court had announced that it entertained.

The appellant company was powerless to combat the view of the court otherwise than by excepting thereto and preserving such exceptions, as was here done. Its position in the trial court and in this court are in nowise inconsistent. It urged there the same theory of the law that it urges here, and it is nowise at fault for the error which occurred, and consequently not estopped.

The rule has been long firmly established in this court that the trial judge is at liberty to modify an instruction to make it conform to the view of the law held by the court, and that if such course be adopted by the court, the party who presented the instruction may except to the modification, read the instruction, as modified, to the jury, and assign as for error in this court the refusal of the court to grant the instruction as asked. It was so expressly decided in *Galena and Chicago Union Railroad Co.* v. *Jacobs,* 20 Ill. 478, and this ruling has been uniformly followed. The rulings must be the same when, as here, instead of modifying the original instruction by erasure or interlineation, the instruction is refused and the theory which the court would have announced by the interlineation or erasure is carried to the jury by an independent instruction framed for that purpose.

It was error to refuse to direct the jury as requested by the refused instruction. The charge involved a rule of law important to the rendition of a correct verdict in the cause, and the error was prejudicial in character.

The judgment must be and is reversed and the cause will be remanded.                              *Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting:

I do not concur in the views expressed in this opinion, nor in the conclusion reached by it. The streets of the cities in this State belong to the people. No street car company has any superior right to their use or to passage along them. The humblest teamster has as much

right to travel thereon, or any part thereof, as the cars
of a street railway company.   The doctrine, that such a
company is "invested with a superior right of way" along
such streets is subversive of the rights of the people in
and to their own highways.   Moreover, under the re-
peated decisions of this court, appellant is estopped from
complaining of the refusal of the instruction announcing
the superior right so claimed, because it asked and pro-
cured to be given instruction No. 5, which announced a
contrary doctrine.   The Appellate Court correctly dis-
poses of the case in the following words:

"It appears from the evidence that appellee, whose
business was that of a fish peddler, had, on the day of
his injury, gone with one Fred Doehn in a light spring
wagon or buggy from his home in the city of Chicago to
a park near the city limits, at Dunning, to put up some
signs to advertise a picnic, and that they returned in the
evening, about 9 or 9:30, toward the city by way of Mil-
waukee avenue, along which the tracks of appellant run.
When appellee and his companion reached a point on the
avenue between two hundred or three hundred yards
from Fortieth street, appellee drove his wagon onto the
car tracks from the side of the street where he had prior
to that time been driving, in order to avoid numerous
bicycles that were going along the side of the avenue
where he was driving.   Doehn also says that this part
of the avenue was not fit to drive in—was full of holes.
The night was dark and the street lighted but poorly by
kerosene lamps about a block apart.   The horse driven
by appellee was going at a trot.   Appellee says 'he was
trotting pretty fast.'   At the south-west corner of Mil-
waukee avenue and Fortieth street there was a saloon
which was lighted up, and the lights shone upon the
street in front of it.   As appellee and his companion
neared Fortieth street, appellee, who was driving, started
to turn his wagon out of the car track,—Doehn says at
his suggestion, in order to water the horse; appellee says,

because he saw the car coming behind him, though he also says that Doehn had just before suggested that there was a watering trough at that place and they should water the horse there. Before appellee got the wagon clear of the track, appellant's car, coming up from behind, collided with it while the rear wheels were either still upon the car tracks or very near to them. The seat of the wagon was thrown down into the body of the wagon, and appellee and his companion were by force of the collision thrown upon the street and appellee was thus injured.

"There is a conflict in the evidence as to the rate of speed at which the car was running; as to whether or not the bell or gong was rung in time to warn appellee of its approach; as to whether appellee exercised due care for his own safety, and as to whether there was a light upon his wagon or buggy, as required by the city ordinance then in force.

"The evidence on behalf of appellee tends to show that the car was running at a rapid rate of speed—at its full speed—and that it went fifty to seventy-five feet before it was stopped after the collision. The evidence on behalf of appellant tends to show that the usual speed of the car was ten miles per hour. That was the schedule time, as testified to by the motorman, and he admits that when he first saw the wagon it was forty or fifty feet ahead of him and he was running at the rate of seven or eight miles an hour. There was a headlight on the car, which could be seen at a distance of three thousand feet away, and which must necessarily have thrown a light to a considerable distance in front of the car, and thus apprised the motorman of the proximity of the wagon in front of him in time to have avoided the accident, had he been exercising ordinary care in the discharge of his duties.

"We are inclined to the view, from a full consideration of the evidence, that the bell or gong was rung for some

distance before the car reached the wagon, but there is evidence tending to show the bell was not in good condition, or cracked, so as not to give a full and clear sound.

"We cannot say, from all the evidence, that the jury were not justified from it in reaching the conclusion that the appellant was negligent in running at too rapid a rate of speed, considering all the circumstances; also in not giving a sufficient and timely warning to appellee of the approach of the car; and that the motorman did not exercise ordinary care to avoid the collision.

"On the question of appellee's care to avoid the collision, we think the verdict of the jury was justified. The evidence of appellee and his companion shows that they both looked and listened, from time to time, as they drove along the avenue, and failed to see or hear the car as it approached from behind them until it was very close upon them, and that appellee at once proceeded to leave the track with his wagon as soon as he discovered the approach of the car. It appears that appellee and his companion were not unacquainted with the locality and the ordinary speed at which appellant's cars were run, but they had the right, under the circumstances shown, to drive upon the track, and to assume that if a car approached them from behind the motorman would exercise ordinary care, and would discover the presence of the wagon upon the track by means of the headlight on the car and the lights along the street, and either slacken his speed or stop the car so as to avoid collision, or give them warning in time for them to leave the track and thus avoid any danger.

"We are therefore of opinion that the court did not err in refusing to instruct a verdict for appellant.

"Complaint is made of the giving of all the instructions for appellee, five in number, all of which are set out in the statement preceding the opinion, except the fifth. As to the first of said instructions, it is said that there was error because it referred the jury to the dec-

laration to ascertain the acts of negligence, and that it appears from the record that at no time during the trial was the declaration shown or read to the jury or its contents explained to them. No doubt the jury should have been informed as to what the declaration charged, in order to make this instruction intelligible to them; but appellant is precluded from making this objection to the instruction, because the same fault appears in its instructions 12 and 13, which were given by the court. It is also said that under this instruction the jury were justified, even if they knew the allegations of the declaration, in finding that the appellant's duty to appellee was to exercise the highest care. If the contention is well founded and the instruction not strictly accurate for this reason, it is fully cured, in our opinion, by appellant's fifth instruction given, which tells the jury that appellant's duty was only that of ordinary care to persons using the street. Other objections made to this instruction are not, in our opinion, well founded, one of which is, that it fails to state that the burden was upon appellee to prove ordinary care. This last objection, we think, is cured by appellant's second instruction, which tells the jury that before the plaintiff can recover he must establish his case by a preponderance of the evidence.

"Complaint is made of the third instruction for appellee, for the same reason, as to burden of proof and the jury being referred to the declaration, as in the first instruction. The same answers as above made to the objections to the first instruction in these respects, apply. It is also said that this instruction is erroneous because the jury are not required to be guided by the evidence on the questions of care and negligence. The instruction does state that the jury are to consider all the facts and circumstances surrounding the entire action, and in accordance with the law as laid down in the instructions. By appellant's first instruction the jury are told that in arriving at their verdict they are to be governed solely

by the law and the evidence, and by the seventh of appellant's instructions given, they are told they should determine from the evidence, and that alone, what the facts of the case really are.   These instructions, taken together, we think fully informed the jury as to their duty in this respect.

"The same objection is made to the appellee's fourth instruction as last above mentioned with regard to the third.   The same answer applies as to the third.   It is also said that it allows the jury to assess damages for mental pain and suffering, whereas there is no averment in the declaration to justify it; also, that the jury are allowed to consider inconvenience to appellee by reason of the injury, and that the instruction assumes that appellee had suffered pain, loss of time and injuries as the direct result of the accident.   The declaration avers that the appellee suffered a severe mental shock, which we think is sufficient to cover mental pain and suffering. The inconvenience which the jury were allowed to consider by this instruction was such as he might suffer as the direct and inevitable result of the accident.   No authority is cited to show that this was not a proper element of damages, and we are of opinion that the instruction was not improper in this regard.   The claim that the instruction assumes that appellee had suffered pain, loss of time and injuries as the direct result of the accident is not reversible error in this case.   The evidence abundantly establishes these matters, which are uncontroverted, and that being so, while it is technical error it is not cause for reversal under the proof in this case.

"We have considered the other objections to instructions given and refused and think they present no cause for a reversal, and do not regard the criticisms of sufficient importance to justify special mention thereof. * * *

"At the time the rebuttal evidence was offered, and at no time thereafter during the course of the trial, does it appear that the surprise of appellant's counsel was

made known to the court, nor was there any motion for a continuance of the cause made on that ground. We think there was no error under the circumstances shown on the hearing of the motion for a new trial in overruling it. (*Waidner* v. *Pauly*, 141 Ill. 442; *Ogden* v. *Danz*, 22 Ill. App. 544; *Dueber Watch Case Manf. Co.* v. *Lapp*, 35 id. 372).

"We are of opinion that the evidence in this respect was of little or no importance in determining any of the questions at issue. The ordinance does not provide where on the wagon the light or lights required should be displayed, and, for all that appears from this record, even if appellee did violate the ordinance, as claimed, there is nothing to show, or which tends to show, that such violation in any way contributed to the injury or excused appellant for its negligence.

"The claim that the damages are excessive is not, in our opinion, tenable. That appellee was quite seriously injured and prevented from carrying on his usual business for several months we think is established by a preponderance of the evidence. His injuries at the time of the trial, which was about two years and nine months after the accident, still caused him pain, and it was shown by his attending physician that portions of his lungs had become solid and had ceased to do their work; that a slight inflammation of the lung tissue would cause that portion of the lung to be destroyed for use at that time, and that in the opinion of the physician there was no cure for that; that it was a serious matter and would always affect him. It is true there was evidence to some extent conflicting with this, but we are not prepared to say that the amount of the verdict was not fully justified.

"Being of opinion that there is no reversible error in the record, the judgment is affirmed."