# The Chicago, Burlington & Quincy R. R. Co. v. Harry Dunn.

1. INSTRUCTIONS—*Complaining of Instructions of Opposite Party When His Own Embody the Same Statement.*—A party can not complain of an instruction for the opposite party if his own instructions embody the same statement.

2. DAMAGES—*When $15,000 is Not Excessive.*—Plaintiff was thirty-five years of age, in good health, and earning sixty dollars per month. His left leg was ground into an unrecognizable mass in front of defendant's car wheel, the wheel not passing over the leg but pushing it in front. A physician cut off the lower portion of the leg before plaintiff was removed from the ground. At the hospital the leg was soon after amputated above the knee. The injury was so severe that the flesh and tissues were torn from the bone so that a man's hand could be passed up between the bone and tissues into the groin. He suffered severe pain, and was confined to his bed for several months. He was totally disabled from performing many kinds of active employment previously open to him, and has since secured labor at a materially reduced rate of wages, but is crippled for life. *Held*, that the giving of $15,000 does not indicate that the jury was governed by passion or prejudice.

**Trespass on the Case**, for personal injuries. Appeal from the Circuit Court of Peoria County; the Hon. THEODORE N. GREEN, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 27, 1903.

JACK & TICHENOR, attorneys for appellant.

JOSEPH A. WEIL, attorney for appellee; JAMES A. CAMERON, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Harry Dunn was seriously injured on the Cedar street crossing of the Chicago, Burlington & Quincy Railroad Company, in the city of Peoria, by a train being pushed over said crossing, and brought this suit to recover compensation therefor. He recovered a verdict for $7,000, which, on motion of defendant, was set aside. At a second trial he recovered a verdict for $15,000. A motion for a new trial was interposed by defendant and denied. Plaintiff had judgment on the verdict and defendant appeals.

The declaration contained four counts. The court instructed against the plaintiff on the first, third and fourth counts. It is argued that the proof did not justify a verdict that the defendant was guilty of the negligence charged in the second count of the declaration; that the proof showed plaintiff did not exercise due care for his own safety, as averred in that count; that the court erred in giving the first and fourth instructions for plaintiff, and in refusing the first and second of defendant's refused instructions; and that the verdict is excessive.

At the point in question Cedar street runs in a substantially northwesterly and southeasterly direction. Defendant crosses that street nearly at a right angle and with eight tracks. Beginning with the northwest side, the first and second tracks are not numbered in this record. The next track is called the main track, and the tracks beyond that to the southeast are numbered 1, 2, 3, 4 and 5, respectively. Plaintiff was one of four men in the employ of a gas company, who, at the time in question, had been doing some work southeast of these tracks, and were returning, driving along Cedar street in a northwesterly direction, and approaching these tracks. They were riding in a one-horse wagon containing also some materials used by them in their work, and the horse was driven by one Brauer. The proof introduced by plaintiff tended to show the following facts : that as these parties approached this crossing a flagman stationed there, who was in fact in the employ of the city of Peoria, but who occupied a flagman's house provided by the railroad company on the southeasterly side of the street crossing, signaled to plaintiff and his companions to stop; that they did stop; that a train of cars on the main track crossed the street, going in a northeasterly direction on the main track; that after said train had got some distance beyond the crossing the flagman signaled the men in the wagon to come on, and also gave a similar signal to a team and driver approaching the tracks on the other side and from the opposite direction; that the driver of the conveyance in which plaintiff was drove upon the tracks; that

both the driver and plaintiff made some effort to see that the way was clear; that their view down the tracks to the southwest was obstructed by the flagman's house, and also by a line of cars standing still on track number 4, and reaching up to the plank crossing over which they were driving; that just as they were going upon track number 3 they heard a voice calling out, but were unable to see from whence it came nor what it meant, until they were on track number 3, when they discovered a line of cars being pushed upon said crossing from the southwest on track number 3; that the driver attempted to get across, but the wagon was struck by the head car, and plaintiff was thrown out and fell under one of the wheels of that car and received the injuries complained of; that no bell was rung nor whistle sounded as said cars approached said crossing. The evidence offered by defendant tended to show that the flagman did not give a signal to plaintiff and his associates to come ahead; that the bell was rung continuously as said line of cars approached said crossing; and that the line of cars on track number 4 did not reach to the plank crossing on which plaintiff and his associates were traveling. Upon these questions there was a great conflict in the testimony. There is no claim a whistle was sounded by the engine pushing the approaching cars. There was abundant evidence on behalf of plaintiff that the bell was not rung, some of it of a positive and some of it of a negative character. There was positive testimony introduced by defendant that the bell was rung. The evidence on that subject is in such condition that we would not be justified in saying that the proof required the jury to find the other way. After two juries have found for plaintiff we can not say that the verdict is not supported by the proof. The conduct of the plaintiff on the wagon up to the time it was struck by the head car, and the conduct of the driver also, and all the facts surrounding the occurrence were before the jury. After two juries have found that plaintiff and the driver were in the exercise of due care, the state of the proofs on that subject would not justify us in saying that the jury

ought to have found that they were not in the exercise of due care. It is not claimed in argument here that the court erred in any respect in its rulings upon the admission of testimony. The evidence does not warrant our disturbing the conclusions of the jury upon these questions of fact.

The fourth count of the declaration charged negligence by the flagman, and that the flagman was in the employ of defendant. Before the close of the proofs plaintiff's counsel stated to the court that plaintiff did not claim to recover under the fourth count of the declaration. By defendant's second given instruction the jury were told that the flagman was not the agent of defendant, and that the question whether the flagman was negligent was immaterial; and by defendant's modified instruction number 1 the court told the jury that if the plaintiff was injured solely in consequence of the act of the flagman plaintiff could not recover; so that the fourth count is entirely out of the case. The first instruction given for plaintiff stated to the jury the charges of negligence set up against the defendant in the first, second and third counts, respectively, of the declaration, and that each of said counts averred that by reason of the negligence in that count specified the plaintiff while in the exercise of due care for his own safety was injured. The fourth instruction given for defendant told the jury to disregard the first count of the declaration. By defendant's third modified instruction the court told the jury there could be no recovery under the third count of the declaration. It is argued that the first instruction given for plaintiff above referred to authorized the jury to find for plaintiff under each or any of the first three counts of the declaration, and that it was therefore erroneous; and also that it conflicted with the instructions already referred to which told the jury there could be no recovery under the first, third and fourth counts; and that the giving of this instruction for plaintiff was reversible error. We think this position untenable for several reasons. First, the instruction does not state that there can be a recovery under any count of the declaration, but only

states for the information of the jury what each count of
the declaration charges, and as the case was actually tried
on all the counts it was entirely proper to state to the jury
what charge each count contained.  Second, this instruc-
tion should be read in connection with those we have
already referred to, given for defendant.  Reading them
thus, the court, after telling the jury the distinct charges
of negligence contained in each count respectively, pro-
ceeded then to tell the jury that plaintiff could not
recover upon the charges of negligence stated in the first,
third and fourth counts, thus eliminating those counts and
the charges of negligence therein contained from their
consideration.  Third, a party can not complain of an in-
struction for the opposite party if his own instructions
embody the same statement.  (North Chicago E. Ry. Co.
v. Peuser, 190 Ill. 67; I. C. R. R. Co. v. Anderson, 184 Ill.
294, 304.)  Instruction number 3, given at the request of
the defendant, told the jury that the plaintiff in order
to recover must prove that at the time of the accident
to plaintiff defendant " was guilty of one or more of
the specified acts of negligence complained of, in the
declaration or some count thereof which caused the
injury."  In instruction number 5, given for defendant, the
jury were told that plaintiff must show by the greater
weight of the evidence " that the defendant was negligent
in some one or more of the ways charged in plaintiff's
declaration."  The same idea is expressed in the sixth
and seventh instructions given for defendant.  Defendant
in its instructions repeatedly referred to the several charges
of negligence contained in the different counts of plaint-
iff's declaration, and therefore can not complain of plaintiff's
first instruction.  The fourth instruction, given by the court
at the request of plaintiff, told the jury that while the
plaintiff did not seek to recover damages from defendant
by reason of any negligence of the flagman, yet in deter-
mining whether or not plaintiff was in the exercise of due
care for his own safety immediately before and at the time
in question, the jury had a right to take into consideration

the evidence with reference to the actions and conduct of said flagman immediately preceding the injuries plaintiff received, together with all the other proof in the case. We see no just objection to this instruction. The jury was clearly instructed on behalf of defendant that the flagman was not the agent of defendant, and that the question whether the flagman was negligent was not a matter to be considered by the jury. But the question whether the plaintiff exercised due care was to be determined by all the circumstances surrounding him. One of those circumstances was the fact that there was a flagman there performing the usual duties of a flagman at a railroad crossing. There is nothing to show that plaintiff or the driver of the horse and wagon knew this flagman was paid by the city or knew of any reason why he should not be governed by the signals and directions of this flagman to the same extent that people are ordinarily governed thereby at any dangerous railroad crossing. The jury might have been inclined to think that as the flagman was not the servant of the railway company the driver should not have driven ahead when the flagman gave the signal to do so, or should not have relied at all upon his presence and actions on the crossing. It was proper to inform the jury that the presence of the flagman and his actions were to be considered in determining whether the plaintiff exercised due care in view of his surroundings and situation.

Defendant's first refused instruction stated that the men in charge of defendant's train in question were not required to stop or check speed on seeing plaintiff and those with him near the crossing, but had a right to expect that they would wait according to the known custom rather than attempt to cross in front of the train. The second count of the declaration charged that the defendant pushed said cars upon the crossing without giving the statutory signals. There was proof to sustain that charge. The instruction just referred to ignored that proof. If defendant undertook to push a line of cars over a public highway without giving the statutory signals, under those circumstances its

servants controlling the cars would have no right to go ahead and assume that persons who had not been notified of the approach of the train as required by law would wait for the train to cross. Defendant's second refused instruction stated that the men in charge of the train, on seeing plaintiff and his party approaching the crossing, were not required to stop or slow down until it became apparent from the actions of the persons in the vehicle that they would attempt to pass in front of the moving cars, and if the jury believed that at that time the cut of the cars was so near plaintiff's wagon as to make it impossible for the train men to avoid the collision, they should find defendant not guilty. This instruction would not be the law as applied to a case where the train approached the crossing without giving the statutory signals, and it ignored the charge in the second count and the proof in support thereof. These instructions were therefore properly refused. In this connection it should be said that while defendant in its argument states that Cedar street has not in fact been laid out over the area occupied by these tracks, it was spoken of generally by the witnesses as a public street, and no claim that it was not seems to have been made at the trial; and moreover, defendant introduced a plat in evidence which shows Cedar street, and is entitled " Cedar street crossing C., B. & Q. Ry." In this state of the proof it sufficiently appears that this was a public street.

It is said the damages are excessive. Plaintiff was thirty-five years of age, in good health, and earning $60 per month. His left leg was ground into an unrecognizable mass in front of defendant's car wheel, the wheel not passing over the leg but pushing it in front. A physician cut off the lower portion of the leg before plaintiff was removed from the ground. At the hospital the leg was soon after amputated above the knee. The injury was so severe that the flesh and tissues were torn from the bone so that a man's hand could be passed up between the bone and tissues into the groin. Plaintiff suffered severe pain. He was confined to his bed for several months. He was

totally disabled from performing many kinds of active employment previously open to him. He has since secured labor at a materially reduced rate of wages. He is crippled for life. While the verdict may be somewhat large from our standpoint, we do not feel warranted in saying that it indicates the jury were governed by passion or prejudice, or that it should be reversed because of the amount allowed. The assessment of damages in such a case does not rest in mere computation, and the award of the jury ought not to be disturbed on appeal unless the appellate tribunal can say it is clear to it the jury were actuated by improper motives in making the assessment.

The judgment is affirmed.