Frank V. Campe, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 14,972.

ORDINARY CARE—*burden of proof to establish.* In an action on the case for death caused by alleged wrongful act the burden of proof is on the plaintiff to establish by a preponderance of the evidence the necessary averment of the declaration that deceased was exercising care and caution for his own safety.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of fact. Opinion filed May 3, 1910.

**Statement by the Court.** This appeal is taken to reverse a judgment entered on a verdict returned for the plaintiff in an action to recover damages resulting from the alleged negligence of the defendant causing the death of Michael J. O'Donnell. The deceased was injured in a collision between a carriage he was driving south on State street, Chicago, in defendant's northbound track and a cable train running north on that track.

The collision took place on February 14, 1904, shortly after six o'clock in the evening, about one hundred and twenty-five feet south of Thirty-fourth street. There were no obstructions in State street between Thirty-fourth and Thirty-fifth streets, and there was no other carriage or car in that vicinity. The street

lamps and electric signs were lighted along this block on State street, and trains and cars could be seen readily for a long distance. The night was clear and cold. State street along this block was paved from curb to curb and there was sufficient room between the street car tracks and the curbs on either side for two vehicles to pass each other.

O'Donnell was in the livery business. He had his own carriages and horses and attended funerals and weddings, and kept his rigs on Emerald avenue between 44th and 45th streets. On the morning of the Sunday of the accident he told a friend that he was going to a funeral that day. No one of the witnesses in the case saw him from that time until about the time of the accident. He was first seen north of Thirty-fourth street on the west side of State street. O'Donnell's horses then turned from the west side of the street and went in a southeasterly direction to the east side of State street at or near Thirty-fourth street. Before reaching the east curb of the street the team again turned and proceeded southwesterly until it reached a point a little south of Thirty-fourth street between the north and south car tracks. At this point they started directly south between the tracks with the east or left hand wheels of his carriage running along the west rail of the easterly or north-bound track of the defendant. During all this time the horses were moving at a brisk trot.

About the time the carriage crossed over to the east side of the street, a north-bound cable train of the defendant was leaving Thirty-fifth street, having stopped at the north side of Thirty-fifth street to receive passengers. The block between Thirty-fourth and Thirty-fifth streets is 629 feet long. The gripman of the train saw the carriage turn over to the east side of the street and supposed the driver was going to let off passengers at the east curb. When he saw the horses turn west as if to cross the tracks again there were several hundred feet between the train and the carriage. When

Campe v. Chicago City Ry. Co., 155 Ill. App. 539.

the team changed its course from a southwesterly direction and started directly south, the gripman sounded his gong vigorously. The horses continuing to come directly south, the gripman released the cable and applied the brakes and stopped his train in a very short space. The front east wheel of the carriage collided with the northwest corner of the grip car with sufficient force to break the wheel, the horses just before the collision having suddenly veered to the west and having passed the grip car untouched. The collision caused the driver, O'Donnell, to pitch forward, and one of the horses fell upon him.

VINCENT J. DUNCAN and C. LE ROY BROWN, for appellant; JOHN R. HARRINGTON, of counsel.

RICHARD J. FINN and A. L. GETTYS, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The question which thrusts itself to the fore, upon a review of the evidence in this record, is, did the deceased O'Donnell exercise due care in driving his team just prior to and at the time of the collision? The burden of proof was on the plaintiff to establish by a preponderance of the evidence the necessary averment of the declaration that he was exercising due care and caution for his own safety. Does the evidence sustain this averment? Upon a careful consideration of the evidence we are of the opinion it does not.

There is no real controversy in the evidence as to the course which O'Donnell's team took from a point on the west side of State street north of Thirty-fourth street to the point of collision, when the times of viewing the carriage and the positions of the witnesses are considered. That course is outlined in the above statement. It appears to have been purposeless, unusual and singularly erratic, and wholly without regard to the approach of the defendant's train which was in

plain view with nothing intervening to interfere with
or obstruct O'Donnell's view for a moment. The evi-
dence presents no reason or excuse for driving from
the west side of the street, where he belonged while
driving south, to the east side, and then turning in a
southwesterly direction and proceeding to a point be-
tween the north-bound and south-bound tracks without
clearing the north-bound track, thus putting himself
directly in front of the approaching train. O'Don-
nell's course from this point directly south toward the
approaching train, while the gong was being sounded
and the headlight and other lights were burning, can-
not be reconciled with the exercise of due care and cau-
tion on his part. The only fact which appears in the
evidence, indicating any care for his own safety and
welfare, is that the left wheels of his carriage skidded
or slid along the track for twenty feet before the colli-
sion occurred. This fact, however, does not mean
much as indicating an effort to avoid the train in view
of the further facts, that O'Donnell had no load in his
carriage, and the distance directly south which the
team traveled, and the speed at which the team was
going and that it was continued unchecked up to the
moment of the collision. There could be no difficulty
in driving an empty carriage across the tracks, or in
pulling it out of the track of the approaching train,
with the slightest care on the part of the deceased. We
are constrained to the conclusion, from all the circum-
stances of the case, that O'Donnell was not exercising
the slightest care in driving his team. The course the
team took and the speed at which it traveled up to the
moment of the collision warrants the belief that O'Don-
nell was either asleep or stupified. We do not base
the belief that he was stupified upon the evidence that
after he was taken to the hospital the odor of liquor
was about him, for liquor may have been administered
to him as a restorative in the drug store to which he
was taken immediately after the accident. But the
aimless and unaccountable course of his team lends

support to the testimony of Arthur Tremah, the grip-man, brought out on cross-examination, that the driver of the carriage did not have any control of the horses and did not appear to be paying any attention to anything. He sat with his hands hanging down and the reins "were hanging loose." This testimony is not specifically denied, although some of the witnesses testify that they did not notice anything peculiar about the driver of the carriage.

On this issue of want of due care or contributory negligence on the part of deceased there is substantially no direct evidence on the part of the plaintiff that O'Donnell was exercising ordinary care, but there is much evidence tending to establish a failure to exercise any care whatever. We think he was guilty of contributory negligence. As the court said in Chicago West Div. Ry. Co. v. Bert, 69 Ill. 388, where the plaintiff was driving in Milwaukee avenue and a street car was going in the opposite direction: "It was his duty, under such a state of facts, to turn out to avoid the car, the driver of the car being unable to turn to the right or to the left, and if through negligence or wilfulness on his part in this respect, a collision ensued, he is not entitled to recover damages against the company, even if the latter were also in default." This rule was reiterated in North Chicago Electric Ry. Co. v. Peuser, 190 Ill. 67. See also Chicago Ry. Co. v. Soszynski, 134 Ill. App. 149; Chicago Union Trac. Co. v. Jacobson, 217 Ill. 404, 408; Memphis Street Ry. Co. v. Roe, 118 Tenn. 601; South Covington & C. St. Ry. Co. v. Besse (Ky. Ct. of Appeals, 1908), 108 S. W. 848; Allworth v. Muskegon Trac. Co., 142 Mich. 25.

On the question of defendant's negligence, the witnesses Tremah and Cady give the course of O'Donnell's team as above stated from a point north of Thirty-fourth street to the point of collision. True-heart, Hendricks and Herron were passengers on the trailer car, and their attention was first attracted by the ringing of the gong and the application of the

brakes in stopping the car. At that time the team was in the center of the street coming directly south with the left wheels in the middle of the north-bound track or on the west rail of that track, and about seventy-five or one hundred feet from the car. These witnesses and Tremah say that the car came to a stop before the collision and that the horses came straight on without attempting to turn out until they were close to the grip car and then they swerved to the west enough to miss the car. Mulcahy, the conductor, corroborates these witnesses as to the sounding of the gong and the stopping of the car before the crash of the collision.

Some contradictions and inconsistencies appear in the testimony of these witnesses as to distances given, and intervals of time, and also some differences between their testimonies given before the coroner upon the inquest and on the trial of the case, but the substance of their testimony is uncontradicted except by the testimony of Mrs. Sack as to the rate of speed the car was running at the time of the collision. Mrs. Sack viewed the collision from a window at No. 3406 State street. She says that the car had not stopped at the time of the collision, and that it was running at the ordinary rate of speed. She is the only witness on behalf of the plaintiff who saw the collision. In view of the circumstances and the undisputed fact that the car did not cover any space after the collision, we think she is mistaken as to the speed of the car and that it was moving at that time. If it had been running at the ordinary speed at that time the relative positions of the train and carriage could not have been as they were shown by the evidence when both carriage and train stopped, and the carriage would have been hurled to one side and probably overturned.

The whole testimony considered, we are of the opinion that the defendant was not guilty of negligence and the plaintiff is not entitled to recover in this action.

In view of this conclusion on the liability question, it

is unnecessary for us to consider the other errors assigned and argued.

The judgment of the Circuit Court is reversed with a finding of fact.

*Reversed with finding of fact.*