**William Martin, Appellee, v. Borden's Condensed Milk Company, Appellant.**

**Gen. No. 15,869.**

. PERSONAL INJURIES—*when recovery for, as result of collision, not sustained.* In an action by a motorman to recover for injuries sustained as the result of a collision with a wagon driven upon the track, *held*, that the evidence showed no negligence upon the part of the driver in charge of such wagon.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with finding of fact. Opinion filed October 20, 1911.

PRINGLE & FEARING, for appellant.

GUERIN, GALLAGHER & BARRETT, for appellee.

Mr. Justice Clark delivered the opinion of the court.

The appellee in this case was a motorman in the employ of the Chicago City Railway Company in the City of Chicago, and on the 16th of August, 1907, was injured in a collision between a wagon of the appellant company and an electric car upon which the appellee was employed. The accident occurred about 3:15 in the morning, on State street, a short distance south of Fifty-sixth street.

The declaration charges "that the defendant, through its agent, carelessly, negligently and improperly drove, managed and guided the said wagon and team of horses at a great, reckless and dangerous rate of speed in the dark in the said car track and on said left-hand side of said public highway, and did then and there carelessly, negligently and recklessly drive the said wagon and team of horses into and against the said car and into and against the plaintiff, who was then and there using all due care and caution on his part, and the plaintiff was then and there, through said defendant's said negligence, knocked down, pushed and knocked against portions of the said car and hurt and bruised. And by reason of said negligence of said defendant he, the said plaintiff, was greatly and permanently injured both internally and externally in divers portions of his body," etc.

There was a trial before the court and a jury, and a verdict in favor of the plaintiff for the sum of $500 upon which judgment was entered. It is sought to reverse the judgment on two grounds: first, that no negligence on the part of appellant was shown; second, that from the undisputed evidence the appellee is shown to have been guilty of contributory negligence.

We have looked in vain in the record for evidence of negligence on the part of the defendant as charged in the declaration, viz: that through its agent it negligently and improperly drove, managed and guided

the wagon and team of horses at a great, reckless and dangerous rate of speed in the dark in the car track and on the left-hand side of the public highway, and carelessly, negligently and recklessly drove the wagon and team of horses into and against the car and into and against the plaintiff, etc. There is evidence tending to show that the milk wagon of the appellant had no light upon it so placed that it could be seen by appellee, and that the driver of the milk wagon of the appellant saw the car coming when it was two or three blocks away. There is evidence also tending to show that while the street was in bad repair, the wagon could have been driven on the side of the street. The declaration nowhere charges the defendant with negligence in failing to keep a light upon its wagon where it could be seen. Such failure would not in our opinion be negligence in itself, especially if, as would appear from the evidence, there was a lighted lantern at each end of the wagon. Nor does the declaration charge as negligence the conduct of the defendant by its agent, namely the driver, in causing the team and wagon to remain upon the car track after he saw the car approaching.

The appellee's testimony is substantially as follows: "At the time of the accident my car was going north. I was going north at 57th place and all of a sudden this wagon appeared before me and the car and wagon crashed into one another, and the front vestibule of the car was broken in on top of me * * * I saw this wagon when I was within twenty-five or thirty feet of him, as near as I can judge. Didn't see a light on it. The wagon was going south. Then I put on the power to stop the car and I could not stop it. I had not space enough to stop it. I applied the air to the brakes and shut off the power. Then they both crashed into one another and the front end of the car was all broken in on top of me, and it tore my leg all to pieces here into the bone. * * * There were no lights there on the street. I could not see only just as far as

the headlight of the car could show me.   *   *   *   It had been raining for several hours; had been raining very heavy all night from about twelve o'clock. There was water on the rails.   *   *   *   The rail was all right, but water was in the brakes; they were wet from the dashing of water against them. That affects the stopping of the car. It affects the shoes that catch hold of the wheel. Does not make them take better hold. They take hold best when dry. I know the brakes won't work as good when they are real wet as when they are real dry. The brakes had been wet ever since it began to rain that night.   *   *   *   As soon as I saw this wagon about twenty-five feet ahead of me I shut off the power and applied the air right away. The car slacked a little, and I had not time enough to check it quick enough. I could not say exactly how. much it slacked, I was right on top of the wagon like a shot you know. Think I slacked down from six miles to about four. I know I did. Couldn't tell exactly the speed I was going when I struck the wagon. I don't think I was going more than four miles an hour, about three or four.   *   *   *   This wagon was one of those big heavy trucks. I guess it was loaded. Don't know whether there was two or four horses. The horses were the first thing I hit. Don't know how far the car went after it struck the wagon.   *   *   *   My car was lighted up with electricity and it had a head light. The night was gloomy and the light was not able to carry very far. Didn't have a weak headlight, but the light cannot go through a gloomy night very far when it is raining heavy. I had the window up in front of me and there were rain drops on it. It was raining heavy on the window. I didn't let the window down because I could not stand there then. I didn't have a rain-coat. Could not see very far.   *   *   *   All of the street lights were out at that time."

From other testimony in the record it appears that the driver of appellant's truck which came in collision with the street car was one Martin Swenningsen; that about one-half a block in front of him there was another truck wagon belonging to appellant which was driven

by Charles H. Wells. Swenningsen was driving southwardly, using the west track, otherwise called the south-bound track, until he was near Fifty-sixth street, when a street car from the north came upon him and he turned into the east or north-bound track to allow the car to pass. The truck he was driving weighed 4,700 lbs. and carried a load of six tons consisting of crates filled with bottles of milk and cream. Wells, who as heretofore stated was in front of him, also drove over into the north-bound track to allow the car coming southwardly to pass. After the south-bound car had passed Swenningsen he was about to return to the south-bound track when a second south-bound car came up behind him. The motorman of the second car rang the bell to keep the track clear. When this bell sounded Swenningsen was still driving southwardly in the north-bound track; he was holding this track until the second south-bound car should pass. The second south-bound car was going very slowly and Swenningsen was unable to get back into the south-bound track after the second south-bound car had passed him in time to escape the north-bound car.

It further appears from the testimony of appellee that his car was going about six miles an hour when he first saw the wagon, and that when going at that rate the car could be stopped with the air brakes within about 45 feet. It also appears from his testimony that on account of the darkness and the rain and because of the fact that his window was up and had rain drops on it he was unable to see the truck until it was about 25 feet ahead of him. In such circumstances it is very questionable whether appellee was using proper care for his own safety and the safety of others who were on the car with him, if he allowed the car to go at so high a rate of speed that with all his efforts he would be unable to stop it within a distance of 45 feet. In other words it would seem that he ought to have reduced the speed of his car to such an extent that he

would be able to stop it within the distance at which he was able to see an object in front of him. Moreover it is questionable from all the testimony in the case whether the rate of speed at which he was going was not considerably in excess of six miles an hour. He testified himself, ''I was right on top of the wagon like a shot you know.'' The driver of the truck which came into collision with his car is not shown to have been negligent in any manner. He had the same right to use the street as appellee or the street car company. North Chicago Railway Company v. Peuser, 190 Ill. 67; Brunhild, admr., v. Chicago Union Traction Co., 239 Ill. 621. It was not necessarily his duty to use the portion of the street unoccupied by the street car tracks especially if, as would seem to be the fact from the evidence in the case, the other portions of the street were unpaved. He was not driving his team at a high or dangerous rate of speed as charged in the declaration but apparently was driving it at a walk.

It is unnecessary to consider the proposition first argued by appellant in the brief, namely, that the accident was due to the negligence of appellee himself. We prefer to rest the decision upon the proposition that no negligence on the part of appellant or its agents or servants is shown in the record and that therefore no basis for recovery by appellee appears.

The judgment will be reversed with a finding of fact.

*Reversed with finding of fact.*