## David Regan v. Frank McCarthy and William J. Newman.
### Gen. No. 11,879.

1. BILL OF EXCEPTIONS—*what may be reviewed notwithstanding, does not purport to contain all the evidence.* Errors assigned upon the instructions may be reviewed notwithstanding the bill of exceptions does not purport to contain all the evidence.

2. INSTRUCTIONS—*when bill of exceptions sufficiently states evidence to justify review of errors assigned upon.* Where the certificate of the judge states that "*The* evidence introduced on behalf of the plaintiff tended to prove the following facts," it is sufficient to justify the appellate tribunal in saying that all the material parts of such evidence, relating to the instructions complained of in the motion for a new trial, set forth in the same bill of exceptions, were summarized.

3. INSTRUCTIONS—*when errors in, will not reverse.* Errors in rulings upon instructions will not reverse where from the whole record as it stands it is apparent that substantial justice has been done and that no future trial could be expected to result in any different verdict, especially if it is deemed doubtful whether the jury could have been misled thereby.

4. INSTRUCTION—*when insertion of phrase, "if any," in, will not reverse.* The insertion of the phrase, "if any," thus throwing

doubt upon the existence of a fact which is uncontroverted, will not reverse where it appears to have resulted in no prejudice.

5. NEGLIGENCE—*what not.* Held, that there was no negligence shown on the part of the defendants by their not carrying such a light on their truck as would enable the plaintiff (a motorman) to see it when approaching it from behind.

6. CONTRIBUTORY NEGLIGENCE—*what is.* Held, that it was negligence *per se,* and as a matter of law, for the plaintiff (a motorman) to run his car at such a high rate of speed that he could not stop it within the distance at which he could see an obstruction ahead of him on the track.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed April 10, 1905.

**Statement by the Court.** This is an appeal from a judgment of the Circuit Court of Cook county in favor of the defendants below (the appellees here) against the plaintiff (the appellant here) for costs.

The judgment was on the verdict of a jury in favor of defendants.

There were in the declaration, on which the cause was finally tried and the verdict rendered, three counts, a fourth count having been withdrawn on the trial.

The trial court instructed the jury to find for the defendant on the first and third counts, hereafter described. This is complained of and assigned and argued as error. Three other instructions, one tantamount to the instruction on the first count of the declaration and the other two on the material question of contributory negligence, are also complained of by the appellant, who says in the statement prefixed to his brief that they amounted practically to an instruction to find for the defendants generally.

The first count of the declaration alleges that on March 31, 1900, on an exceptionally dark night, the appellant was a motorman on an electric street car on California avenue, and that the appellees were, by their servant, driving an exceptionally heavy truck with exceptionally heavy freight (a steam boiler) at a very slow pace along the tracks in front

of the street car, in the same direction as the street car. It further alleges that it was so dark that it was impossible for the appellant to see the truck, if the truck had no light on it, until said truck was too near for the appellant to stop his car in time to prevent a collision, and that it was the duty of the appellees to have a light placed on said truck while it was traveling on the street car tracks, so that it might be possible for the motormen running the cars on said track to see the truck in time to avoid a collision; but that appellees neglected that duty, in consequence of which the appellant, while in the exercise of due care "and driving his car along said tracks at no greater rate of speed than he was entitled to drive it at," failed to see the truck and his car ran into it, and he was severely injured.

The second count alleges the same state of facts, and that the night was "so dark that it was impossible for the plaintiff to see said truck until said truck was too near for plaintiff to stop his said car in time to prevent a collision, and declares the duty of the defendants, by their servant, to have been "to keep a look out and listen for the approach of said car of the plaintiff along said tracks upon which said truck was going as aforesaid, and to turn out of said tracks and allow said car to pass, and to use reasonable care not to obstruct and remain in the way of the same." It then alleges a neglect of that duty by the defendants and the consequent collision and injury to the plaintiff, while he was in the exercise of due care, etc.

The third count ("First Additional Count"), in the language of appellant's "Statement," "simply restates with a a little more detail and particularity the cause of action stated in the first original count. The duty (as to carrying a light) "is specified somewhat more particularly."

The bill of exceptions shows that at the trial the appellant introduced evidence tending to prove that he had been ten years a motorman in the employ of the Chicago Union Traction Company; that at about eight o'clock on the night in question he was driving an electric car along California avenue, which was not a built up street at the time and

place of the accident, but had an open field or prairie for three or four blocks on one side and a few buildings at intervals on the west side; that the truck of defendant was drawn by four horses and loaded with a heavy boiler, and was going along the tracks to the north at a slow rate; that upon the truck were two men in the employment of the defendants; that three or four motormen driving cars along California avenue had passed said truck prior to the accident, had seen no light upon said wagon or boiler, and had not collided with said wagon; that the car driven by the plaintiff had an electric headlight consisting of a single incandescent lamp, in front of a reflector which could be seen at a distance of at least half a mile by parties upon the track ahead of the car, if they chanced to be looking for it, and that said headlight would throw a light ahead upon the track a distance of from ten to thirty feet (according to the different witnesses); that as the plaintiff was approaching the crossing of Noble avenue and California avenue he shut off the power of his car and had his car under control and rang the bell on his car, in accordance with the custom of the company to ring the bell at all crossings; that the plaintiff was looking ahead and did not see the truck and boiler being driven along the track until he was at a distance of thirty to fifty feet of same; that he then screwed down the brake; that the plaintiff's said car collided with the rear of said wagon with such force that the front end of the car was broken in and the plaintiff thrown back into the car and injured.

The evidence for the plaintiff further tended to show that immediately previous to the accident the plaintiff was running his car at from eight to ten miles an hour; that the distance in which his car could be stopped when running at this rate varies according to the condition of the track, being from fifty to seventy-five feet on a dry rail, and if the track was in an exceptionally slippery condition, not for one hundred feet or more; that on the night of the accident the air was moist, which might cause the rail to be slippery; that reversing the power might under some condi-

tions stop a car more quickly than merely applying a brake,
but not if the rails were exceptionally slippery; that the
plaintiff did not reverse the power; that there was a lighted
gas lamp on the corner of Noble avenue and California ave-
nue near which this accident occurred; that when the plain-
tiff saw the rear of the wagon, which was about fifteen feet
long, he also saw the face of one of the men on said wagon
looking toward him; that the plaintiff and a passenger
standing beside him on the front platform of the car were
each looking ahead immediately previous to the accident,
and that neither of them saw any light upon the wagon or
boiler; that he did not know at the time of the accident, or
prior thereto, whether or not his car was properly equipped
with sand to assist in stopping it.

The bill of exceptions shows that the appellees intro-
duced evidence tending to show that the night in question,
at and previous to the time of the accident, was not an un-
usually dark one, that it was clear but cloudy; and that
it was possible to see objects at a much greater distance
than would appear from the testimony given on behalf of the
plaintiff; that the plaintiff, if he had been vigilant, could
have seen, and ought to have seen, the boiler and truck
ahead of him in time to have stopped his car; that the
truck loaded with the boiler had traveled the whole length of
California avenue, from Chicago avenue to Noble avenue,
without accident, covering between these points nearly three
miles; that whenever signalled to turn out to allow the
street car to pass, the driver had so turned out, and a num-
ber of cars passed by without injury to any one; that the
defendant, Newman, tied with ropes to the side of the boiler
a lantern at starting the trip; that this lantern was on the
right side of the boiler, up near the forward end of the
truck, and was lighted continually until and at the time of
the collision; that besides the driver of the truck, another
man kept a lookout for cars approaching from behind; that
just before the collision the driver was attempting to turn
out of the track, as soon as he realized that the car of the
plaintiff was coming up behind and was in danger of run-

ning into him, but did not have time to clear the track before the collision; that at the time of the collision, or just after the impact, the motor was working and the car was still pushing along the track, and the witness, Davis, to stop the motor, released the trolley from the wire and the motor stopped working.

This being the state of the evidence, the trial court gave to the jury twenty-four different instructions—three at the request of the plaintiff and twenty-one at the request of the defendants. Of these twenty-one, four, numbered 1, 2, 22 and 24, are, as heretofore indicated, assigned and argued as error by the appellant. They are as follows:

(1) "The jury are instructed that as to the first count in the original declaration, and as to the first additional count to the declaration herein, they should find the defendants not guilty."

(2) "The jury are instructed as a matter of law that the defendants in this case owed no duty to the plaintiff to have on their wagon any light to enable him to see the same when approaching said wagon from behind."

(22) "The jury are instructed as a matter of law, that it is negligence for the plaintiff to run his car at such a high rate of speed that he could not stop his said car within the distance at which he could see an obstruction ahead of him on the tracks."

(24) "The jury are instructed as a matter of law that in determining whether the plaintiff was guilty of contributory negligence, they have a right to take into consideration the rate of speed at which said car was being run by the plaintiff; the slippery condition of the track, if you find such slippery condition has been proved; the plaintiff's lack of knowledge as to whether his car was furnished with sand, together with the efficiency of the headlight, if any, upon the plaintiff's car, and all the other facts and circumstances in the case; and if from all the facts and circumstances they believe that the plaintiff was not exercising ordinary care for his own safety, at and just prior to the

time of the injury, then they should find the defendants not guilty."

WILLIAM DILLON, for appellant.

CANNON & POAGE, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

Counsel for appellees insist urgently that there is nothing for this court to consider in this appeal. They say that the bill of exceptions does not purport to contain all the evidence; that all the instructions complained of but one require for their consideration that the evidence should be weighed, and that consequently in the absence of all the evidence they cannot be held erroneous.

We do not agree with these premises, and consequently cannot assent to the conclusion. It seems to us that counsel for appellant took the proper course, and pursued the best practice in summarizing the evidence offered on each side, and reproducing it only far enough to present fairly and properly the questions raised by his assigned errors. Costly v. McGowan, 174 Ill. 76; I. C. R. R. Co. v. O'Keefe, 154 Ill. 508.

We do not think that for the purpose of passing on the four instructions complained of, any weighing of conflicting evidence is necessary. That which the evidence tended to prove is set forth, and we think that in the case of plaintiff's evidence, at least, the intendment of the language under the certificate of the judge, that "*The* evidence introduced on behalf of the plaintiff tended to prove the following facts," would be that all the material parts of such evidence, relating to the instructions complained of in the motion for a new trial, set forth in the same bill of exceptions, were summarized.

We have accordingly considered carefully the instructions in question, and the able and ingenious argument by which counsel have attacked them. But it seems to us, from a consideration of the whole record as it stands, apparent that

substantial justice has been done, and that no future trial could be expected to result in any different verdict.

Therefore this court would be, in any event, much disinclined to disturb the judgment, even if error were found in the instructions, especially if it deemed doubtful whether the jury could have been misled thereby. Nelson v. Richardson, 108 Ill. App. 121; City of Aledo v. Honeyman, 208 Ill. 415.

This consideration is sufficient to dispose of the objections to the 24th instruction, which are only that the words "if any" are inserted after "headlight," although there was no contradiction in the evidence of the existence of such a light, and the omission to limit the failure of the plaintiff to exercise ordinary care to a failure which contributed to the happening of the accident.

We do not think the jury were misled by either of these alleged errors, nor that they would have been so misled even had the instruction not been supplemented (as it was) by another, (No. 5) which involves the proposition that the negligence of the plaintiff, to prevent recovery, must have contributed to the happening of the accident.

But it is the giving of the three other instructions complained of—1, 2 and 22—that the appellant especially attacks in his argument. Giving them, the appellant suggests, under the circumstances of this case, was equivalent to taking it from the jury, although it was still left to the jury to say whether or not the injury resulted solely from the defendants' servants not exercising reasonable care to get out of the way of the car. This may be so under the evidence developed in this case. It is conceivable, however, although not perhaps very probable, that a state of things could exist in which the plaintiff, although able "to see the obstruction ahead of him on the tracks, at a distance within which he could stop his car at the rate of speed he was going," would not be negligent in failing thus to stop it. The truck, for example, might have been proven to have given some indication of turning out sufficient to mislead the plaintiff and yet have failed so to turn out.

But whatever may have been the effect of those three instructions, we see no error in the two doctrines which they lay down: first, that there was no negligence shown on the part of the defendants by their not carrying such a light on the truck as would enable the plaintiff to see it when approaching it from behind, even if the fact were as stated; and secondly, that it was negligence *per se* and as a matter of law for the plaintiff to run his car at such a high rate of speed that he could not stop it within the distance at which he could see an obstruction ahead of him on the track.

Perhaps it would not be necessary for us to approve this last proposition, for the evidence as summarized tends to show no negligence on the part of the defendants or their servants, unless failure to have a light on the truck that could be seen from behind is to be so held, and without some showing of negligence on the part of the defendants, the absence or presence of negligence on the part of the plaintiff would be immaterial, so far as this judgment is concerned. But, as we have said, we find no fault with either doctrine laid down in the instructions. To hold any one of these instructions bad would be to hold that the privileges of the street cars in the streets were greater than they have been repeatedly declared to be by the Supreme Court. The only superiority now allowed them in the streets is the right of way, which, the Supreme Court has said, is for the public convenience and, because the cars are confined to the track, must necessarily be given them. But it says, "On the other hand a street railway company is charged with the knowledge that the public may lawfully use the entire street, and it must in operating its cars on the street employ all reasonable means to avoid injuring those whom it knows may rightfully use that part of the street occupied by its tracks." North Chicago Electric Ry. Co. v. Peuser, 190 Ill. 67.

In the case at bar the right of way of the street car was conceded. To go further and say that the owners of any heavy truck carrying heavy machinery at night in a sparsely

Regan v. McCarthy.

settled portion of Chicago were guilty of negligence, not only preventing recovery on their part for an injury done to them by an electric car colliding from behind, but also rendering them liable for injury to the car and its operators, simply because they did not carry a light which could be seen from said car, would be, in our opinion, to establish a doctrine very dangerous to the public in general. The great weight, the terrific motive power and the high rate of speed of such cars are known. But it would be very difficult to draw the lines of weight or size or location or time, at which it became the duty of the trucks which carry freight, to reverse the usually received rule and give warning to, instead of receiving warning from, such cars approaching from behind. The argument *ab inconvenienti* is here very strong.

Nor do we see anything unreasonable or oppressive in the absolute rule laid down by the 22nd instruction, that the operator of a street car cannot without negligence run his car at such a rate of speed that he cannot stop the car within the distance at which he could see an obstruction ahead of him on the tracks. Such a rule, on the contrary, seems to us to fall within the proposition enunciated in the North Chicago Electric Ry. Co. v. Peuser, *supra,* that "he must employ all reasonable means to avoid injuring those whom he knows may rightfully use that part of the streets occupied by the cars." It is approved in *obiter dicta* as appellant's counsel concede in Calumet Ry. Co. v. Lynholm, 70 Ill. App. 371, and Gilmore v. Federal Railway Co., 153 Pa. State, 31.

Counsel for appellant argues that the obligation of an electric road is no greater than that of a steam railroad in this regard, and that it would not be contended that a steam railroad running through a city in the night time is bound to keep down its rate of speed to such a point that it can stop within the distance that its driver can see ahead. But where such railroads cross a street at grade it is obliged to have gates to prevent accidents.

Counsel also say that there is no obligation on the street

car operator to carry a searchlight. Undoubtedly not, pro-vided he keeps the speed of his car within the rate at which he can stop it within the limit of the light he has. But if on streets that are not built up, or on which there is little traffic, or where, for some other reason, he thinks a very high rate of speed is usually proper and advisable, and adopts it, it may well fall within the rule of "reasonable precaution" that he should carry "a searchlight," if by that is meant a light that will illuminate the track before him for a long distance.

The judgment of the Circuit Court is affirmed.

*Affirmed.*