# Frank J. Sullivan, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,977.

1. NEGLIGENCE—*how question whether violation of ordinance constitutes, determined.* Whether an infraction of an ordinance requiring lights is a contributing cause of an accident, is a question for the jury to determine.

2. NEGLIGENCE—*when ordinance requiring lights inapplicable.* Such an ordinance does not apply after day-break.

3. EVIDENCE—*how time of day-break established.* The only competent evidence in this case as to the time of day-break on a particular day is that adduced from the weather bureau officials.

4. EVIDENCE—*what records incompetent. Held,* that the records kept by an electrical engineer in the employ of the city of Chicago which purport to show when electric lights controlled from a power house were shut off, were incompetent.

5. WORDS AND PHRASES—*"day-break" defined.* Day-break is the dawn or first appearance of light in the morning.

6. APPEALS AND ERRORS—*when admission of erroneous evidence will not reverse.* The admission of erroneous evidence will not reverse unless prejudice results.

7. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its substance was substantially given in other instructions.

8. INSTRUCTIONS—*approved form as to damages in personal injury case.* An instruction upon this subject as follows, approved:

"If under the evidence and instructions of the court the jury find the defendant guilty, then in estimating the plaintiff's damages, if any, it will be proper for the jury to consider the effect, if any, of the injury in the past and in the future upon the plaintiff, the use of his arm and his ability to attend to his affairs generally, in pursuing any ordinary calling, irsofar, if at all, as the evidence shows that these have been affected in the past and will be affected in the future, and also the bodily pain

and suffering if any, he sustained or will sustain as a direct result of said injury, and any and all damages insofar, if at all, as they are alleged in the declaration and shown by the proof to be the necessary and direct result of the injury complained of.''

9. INSTRUCTIONS—*when not erroneous in failing to identify issues.* *Held,* that an instruction complained of in this case was not erroneous in that it failed to identify issues referred to, when construed in connection with other instructions given.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed February 5, 1912. Rehearing denied and opinion modified and refiled February 19, 1912.

SAMUEL S. PAGE and C. LEROY BROWN, for appellant.

JAMES C. MCSHANE, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The appellant, the Chicago City Railway Company, in this appeal seeks the reversal of a judgment against it for five thousand dollars rendered by the Superior Court of Cook county on June 26, 1909, in favor of the appellee, Frank J. Sullivan.

The judgment was in an action on the case for personal injuries and was rendered on the verdict of a jury.

The occurrence resulting in the injuries was the collision, at about half past six in the morning of January 15, 1908, of one of the appellant's cars with a wagon which the appellee was then driving eastward on Forty-seventh street in the city of Chicago. The collision was a "rear end" one, the car running into the wagon from behind. The wagon was thus pushed around and Sullivan was thrown to the ground, where the wheel of the wagon passed over his arm, breaking it and badly crushing the bones so that two operations were necessary before proper apposition was secured.

The arm is left somewhat deformed and without its normal strength or capacity for motion.

One of the forty-three assignments of error made by the appellant asserts that "the verdict was excessive," but in its argument herein this claim is not in itself urged as a ground for reversal.    It is, however, insisted that the assessment of damages was "extraordinarily liberal" and that this was proof of the prejudicial and therefore reversible character of the error which appellant argues was committed in an instruction concerning damages, which will be hereinafter referred to.    We do not think that the damages were, in view of the injuries proven by the testimony of the plaintiff and of the medical men produced by him, so large as to show passion or prejudice or justify us in reversing the judgment if it be otherwise sustainable.

The positions taken by the appellant against its being otherwise sustainable are three:    First, that it and the verdict on which it stands are contrary to the law and to the clear weight of the evidence;    second, that the court below erred in admitting incompetent evidence; and third, that the court erred in rulings on instructions, refusing an instruction that should have been given and giving several instructions that should not have been given.

The first of these positions is divided by appellant into the claims:    (a) that the weight of the evidence proved that the defendant (by its motorman) was guilty of no negligence, but exercised reasonable care;    (b) that there were circumstances proven by, and undisputed in, the evidence which show the plaintiff to have been guilty of contributory negligence as a matter of law; (c) that if this be not so, nevertheless the clear weight or preponderance of the evidence on other matters showed contributory negligence.

The essence of the defense under the first of these claims is that under the law a collision between a street car and a vehicle going in the same direction raises no

presumption of negligence, and that without such presumption the evidence of any negligence in the present case is lacking or is clearly overborne by the evidence to the contrary effect.

The declaration charged in general terms that the defendant "so negligently * * * managed and operated said street car * * * that it ran against * * * said wagon."

The jury were instructed at the request of the plaintiff that the defendant's car had the right of way over other vehicles over the track in question, but that the drivers of other vehicles had the right to drive upon said track provided they used ordinary care not to unnecessarily obstruct street cars, and that if the motorman knew or should have known that other vehicles were accustomed to drive upon and along said track, it was his duty to exercise ordinary care towards keeping a proper lookout for such vehicles, and to exercise ordinary care to prevent the car from running against such vehicles.   (Instruction 2.)

At the request of the defendant they were instructed that if they believed from the evidence that the injury was the result of a mere accident, they must find the defendant not guilty (instruction 12); that the burden was not on the defendant to prove that it was innocent of the charges made against it, but that the burden of proving the negligence charged was on the plaintiff (instruction 16); that the motorman in the absence of knowledge, actual or within his reach, to the contrary, had the right to act on the assumption that the plaintiff would act with due care and caution and prudence for his own safety (instruction 18); and that by reason of its convenience to the public as a carrier of passengers and because of the inability of its cars to turn out, a street railway company is vested between street intersections with the right of way over other vehicles to the portion of street occupied by its tracks (instruction 19); that there was no presumption of negligence

against the defendant from the mere fact alone that the accident happened (instruction 20); that the defendant was not bound to run its cars in such a manner as would make accidents impossible, but only to handle and manage its cars in an ordinarily careful manner to avoid collisions with others upon the street who were themselves in the exercise of ordinary care and caution (instruction 21); and that the motorman was not bound to use the highest degree of care and caution possible to avoid coming in collision with other vehicles upon defendant's tracks, but only to use ordinary care to prevent such collisions (instruction 30).

We think these instructions stated the law on the question of the duty of the defendant and its agent and the alleged default therein claimed by the declaration as favorably to the defendant as it had a right to ask.

The instructions taken together certainly are not more stringent in laying down the duty of the defendant than the rule stated in North Chicago Electric Railway Company v. Peuser, 190 Ill. 67, that the operator of a street car "must employ all reasonable means to avoid injuring those whom he knows may rightfully use that part of the streets occupied by the cars," and they fail to go so far as the instructions approved by this court in Regan v. McCarthy, 119 Ill. App. 578, that it is negligence in a motorman to run his car at such a high rate of speed that he cannot stop it under the circumstances shown in evidence within the distance at which he could see an obstruction ahead of him on the tracks.

In the case of Regan v. McCarthy we held that while there might be conceivable circumstances which would prevent its being conclusive proof of negligence that a car was not stopped within the time in which it could be stopped, there was no objection to the statement that it was such proof of negligence that the car was being run at a rate of speed which rendered it

impossible to stop it within the distance for which under any given state of circumstances existing an obstruction ahead of it on the tracks could be seen.

In the case at bar we have no hesitation in holding that it was at least a question for the jury—with whose decision we shall not interfere—whether the motorman was not guilty of negligence in running into the plaintiff's wagon under the circumstances shown by the evidence. We do not think that there is either a lack of evidence to that effect or a clear weight of evidence to the contrary.

Another claim concerning the sufficiency and weight of the evidence is that the negligence of the defendant, even if assumed, does not justify the verdict or judgment, because the plaintiff was, as a matter of law, guilty, under undisputed evidence, of contributory negligence. Evidence much relied on to establish this position is that which, without contradiction, establishes the fact that the plaintiff was driving a wagon which, at the time of the collision, carried no light. An ordinance of the city of Chicago was introduced as follows:

"LIGHTS ON VEHICLES.

1443. HOURS FOR CARRYING: It shall be unlawful for any owner or driver of any automobile, wagon, truck, dray, cart, carriage, cab, omnibus, bicycle, motorcycle, or other wheeled vehicle to use the streets of the City without having displayed until daybreak after the hour of eight p. m. during the period commencing with April first and ending October 31st and until daybreak after six p. m. during the period commencing with November first and ending March thirty-first, one or more lights.

1444. PENALTY: Any person violating any of the provisions of the preceding Section shall be fined not less than ten dollars nor more than fifty dollars for each offense."

In any event, it would have been for the jury to say whether an infraction of this ordinance, if it had been

violated, was a contributing cause of the accident. Kenyon v. Chicago City Ry. Co., 235 Ill. 406. It would not have been proper for the court below, nor would it be proper for this court, to declare it such a contributing cause as a matter of law.

The jury were, in our opinion, correctly and sufficiently instructed as a matter of law on the nature and effect of any contributory negligence of the plaintiff; but no instruction construing the ordinance nor specifically alluding to the effect of a violation of it seems to have been asked or given.

The ordinance was objected to by the plaintiff when offered in evidence by the defendant, but was admitted over the objection. It is probable, therefore, that its effect and the effect of its violation was brought by argument before the jury. Whether they were asked in such argument to determine its applicability, we cannot know, and it is not material. If it were held applicable to the time—six thirty in the morning of January 15, 1908—then, although the question of its infringement would be settled, there would still remain open to the jury the question whether that infringement contributed to the injury. That question would then, however, be involved in our consideration of the weight of the evidence. We do not so consider it as the matter actually stands, for we hold that the ordinance was not applicable and therefore not violated. If it were left to the jury whether it was "daybreak" at the time and place in question, and if it inheres in their verdict that they found it to be so, their decision was a correct one and any other would have been unjustifiable. We think indeed that the only competent evidence on this point was the statement of Professor Cox of the Weather Bureau, from a scientific standpoint, that daybreak was an hour and forty-three minutes before sunrise on that day, and that sunrise was 7:16 a. m.

This testimony of Prof. Cox was indeed as to "twilight" the first question asked him being, "What was the length of the twilight before sun-up?" His answer indicating that length was followed by the question, "That is the break of day, you mean?" which he answered: "I mean that one hour and forty-three minutes before it was sunrise it would be absolute darkness, and then it gradually changes from that to dawn. It commenced to get daylight."

But we know of no definition of "daybreak" materially differing from that of the Century Dictionary— "The dawn or first appearance of light in the morning," or of Webster—"The time of the first appearance of light in the morning." This definition makes "daybreak" synonymous with the beginning of the twilight described by Prof. Cox as occurring on January 15, 1908, at 5:33 a. m., about an hour before the accident. We cannot, in construing a penal ordinance, make "daybreak" mean something extending the operation of that ordinance beyond what the standard definitions of the word would effect.

After "daybreak" there was no obligation under the ordinance on the plaintiff to carry a light on his wagon. Failure to do so under some circumstances might indeed have been justification for a jury's finding him contributorily negligent. There was left to the jury, however, in this case the question of the plaintiff's negligence under all the circumstances, including light or darkness and the distance at which objects could be seen, the weather that morning, the condition of the street and the snow or absence of it therein, the condition of the tracks, the alleged passage of a westbound car, behind which the plaintiff says he was attempting to pull out of the way of the east-bound car which ran his wagon down, and the speed of both vehicles, as all these things appeared and were discussed by the varying if not conflicting witnesses.

It inhered in the verdict, given under full instructions that contributory negligence would forbid the plaintiff's recovery, that the jury found from the evidence that he was not guilty of it, and we see no reason to disturb that finding, either because of the undisputed absence of lights on the wagon or because of the other grounds urged by the defendant.

This leaves for our consideration only the alleged errors of the trial Judge during the trial.

The first of these of which complaint is made is the reception in evidence of a record made by one George Steadman, an electrical engineer for the city of Chicago, located at the city's electrical power house at 6345 Wentworth avenue in Chicago, which power house had been proven by a previous witness to furnish street electric lights on 47th street at the place of the accident. This record was a record made in writing each day in this power house and thereafter placed in a book. It purported to show the time the electric lights controlled from said power house were shut off. It would seem from the evidence to have been in the nature of a report sent each day from the power house to the city electrician's office at the city hall. Besides the testimony of the witness Steadman and of another named Foltz concerning the actual matters involved, which were whether or not the lights were lighted at the time of the accident, and if not, the reason therefor, the entry itself was read into the record and marked "Exhibit A." The transcript of the record says: "Said original exhibit was part of a book and the part admitted in evidence is set forth in the preceding quoted excerpts read. The book itself by agreement of the parties did not go to the jury." The parts read which were material were "Number of circuit 1", the date, "1-15-08" and "Time of turning off 6:30," which the witness explained meant that the lights were turned off on Circuit 1 on January 15, 1908, at 6:30 a. m.

The appellee contends that the admission of this memorandum in evidence was justifiable because it was a record made by a public officer in the discharge of his official duty, and that it was competent and material to show conditions at the point involved as well as tending to show that it was "not dark," by which we suppose is meant that it was after "daybreak" and presumably light enough to see a wagon at some distance ahead on the tracks. The admissibility of the evidence on any ground is denied by the appellant, and the question is argued at length by both parties. We are inclined to agree with the appellant that the memorandum as offered was incompetent and its admission erroneous. But we are not of the opinion that the error was a very important one or that it can reasonably be supposed to have had any misleading effect on the jury. Not every admission of incompetent evidence is a ground for reversal. The testimony of Foltz had shown that the 47th street lights were fed from the power house in question and that a record showed the time the lights were turned out at that station on January 15, 1908. Steadman testified that he was located at that plant and that a record produced was in his handwriting and was made in the morning after shutting down. He was then asked, "What time was the power shut off and the lights turned out on the morning of January 15, 1908?" This question was objected to by the defendant and the court asked: "Will you offer the records?" Counsel for plaintiff replying in the affirmative, the court of its own motion said, "Well, I think the records are competent." The witness, before the excerpts noted were read, testified that he had made the memorandum "honestly" and "truthfully" setting down the facts on the morning specified. Counsel for appellant now argue that "Circuit 1" was not mentioned in the testimony of Foltz or Steadman, but only in the memorandum, and that there being no evidence that Circuit 1 supplied 47th street, the mem-

orandum is entirely unconnected in the evidence with 47th street. No suggestion of this sort, however, was made when the introduction of the memorandum was objected to before the trial judge. It was treated by both sides apparently as referring to the locality involved.

After the excerpts were read counsel for plaintiff asked Steadman, "When did you turn off the lights that you made entries of, when it was dark or when it got to be daylight?" The question was objected to, but the witness answered, "After daylight." The court then ruled: "That objection sustained," but no motion was made to strike the answer out. On further examination, counsel for plaintiff asked the question, "They" (i. e. the lights) "were certainly all out at 6:30 that morning?" to which the witness, without objection to question or answer, replied in the affirmative.

We have described the circumstances surrounding the admission of this piece of evidence more fully than we should have otherwise done because of the emphasis placed by the parties themselves on the contention regarding it. We do not ourselves regard it as very serious or significant. That the street lights were out on 47th street was relevant and material if not very important evidence; but we have expressed our view that the question of whether it was "daybreak" under the meaning of the city ordinance was practically foreclosed, by accurate scientific testimony, and as to the conditions of murkiness, obscurity, and as to the possibilities and probabilities of the motorman seeing the plaintiff's wagon and the plaintiff seeing the car at a given distance, the jury had the varying statements of the parties and other persons actually on the ground, and were unlikely to be influenced by this memorandum in determining the essential question for their consideration of the alleged negligence of the

respective parties. We shall not reverse the case on account of the admission of this evidence.

The other alleged errors of which appellant complains are rulings on instructions. The trial judge refused the following instruction, identified in the transscript and Abstract as 39 E. In refusing it he marked it "Already given":

"The court instructs you that it is not enough to entitle the plaintiff to recover in this case to prove that the motorman in question was guilty of negligence which proximately helped or contributed to bring about the accident and injury in question, but the plaintiff must go further and prove by a preponderance of all the evidence in the case considered under the court's instructions that he did not proximately help or contribute to bring about said accident and injury by any want of ordinary prudence, care, vigilance, caution and foresight on his part."

We think that the thirty-four instructions given, taken together, covered both the obligation of proof of due care on the plaintiff's part and the rule that such due care must appear affirmatively by a preponderance of the evidence. The tendered instruction quoted in itself may have been unobjectionable, and if it had been given, others given might have been superfluous; but we do not think that its refusal under the conditions stated was reversible error. The jury could have been left in no doubt by the instructions which were given as to their duty if they found that the plaintiff had not established by a preponderance of evidence his freedom from any contributory negligence or want of due care.

The appellant also complains of the following instruction given at the request of plaintiff:

"7. If, under the evidence and instructions of the court the jury find the defendant guilty, then in estimating the plaintiff's damages, if any, it will be proper for the jury to consider the effect, if any, of the injury

in the past and in the future upon the plaintiff, the use of his arm and his ability to attend to his affairs generally, in pursuing any ordinary calling, in so far, if at all, as the evidence shows that these have been affected in the past and will be affected in the future, and also the bodily pain and suffering, if any, he sustained or will sustain as a direct result of said injury, and any and all damages in so far, if at all, as they are alleged in the declaration and shown by the proof to be the necessary and direct result of the injury complained of.''

We do not think this instruction erroneous or objectionable.

The appellant also complains of Instruction 1, given at the request of the plaintiff, which relates to the quantum of evidence required of the plaintiff to prove ''his case,'' and of Instruction 4, which is as follows:

''The Court instructs the jury that if you believe from the evidence that the plaintiff while in the exercise of ordinary care for his own safety, if you believe from the evidence that he was in the exercise of such care, was injured as a direct result and in consequence of the negligence of the defendant as charged in the declaration, if you believe from the evidence that the defendant was so negligent, then you should find the defendant guilty.''

We think that the objection made to these instructions, that in referring to ''the plaintiff's case'' and to ''the negligence of the defendant charged in the declaration,'' they fail to identify the issues to which they refer, is not, in view of the other instructions given, the nature of the issues and the rulings of the Supreme Court, tenable; nor that the one peculiar to Instruction 4, that it limits the care which the plaintiff was obliged to prove to the moment of the accident, and eliminates the hypothesis of ''his going upon the street without taking precautions to guard against the dangers incident thereto,'' is more so.

Finding no reversible error in the proceedings below, the judgment of the Superior Court is affirmed.

*Affirmed.*